## WM. BARIE DRY-GOODS CO. v. CASLER.

1. FINDINGS OF FACT—REVIEW.
   Where there is evidence to support the findings of fact of the trial judge, the evidence will not be reviewed.

2. SAME—PROPRIETY.
   It is proper for findings of fact to show that plaintiff at the trial waived one of the alleged causes of action.

Certiorari to Eaton; Smith, J. Submitted October 20, 1904. (Docket No. 58.) Decided November 9, 1904.

Proceedings by the Wm. Barie Dry-Goods Company against Spurgeon D. Casler under the fraudulent debtors' act. There was judgment for defendant, and plaintiff brings certiorari. Affirmed.

*Smedley & Corwin,* for appellant.

*J. B. Hendee* (*Garry C. Fox,* of counsel), for appellee.

HOOKER, J.   The plaintiff instituted this proceeding under the fraudulent debtor act.   The sufficiency of the affidavit was determined by this court in 131 Mich. 23. The case was afterwards tried at circuit upon the merits, without a jury, and the defendant was found not guilty, and an order dismissing the proceedings was made.   All the testimony is returned, upon certiorari sued out by the plaintiff; and it is contended on its behalf that said testimony conclusively shows defendant's guilt, and that the court erred in finding him not guilty.   Exceptions were taken to several of the findings of fact, and to the conclusion of the judge upon them that defendant was not guilty.

The question before us is therefore reduced to the single one of whether the undisputed facts conclusively show guilt, so that we can say that it was error for the court to find otherwise.   It is not enough for us to be able to say that we would have rendered a different judgment upon disputed questions of fact.

The circuit judge found:

### FACTS.

(1) That Spurgeon D. Casler was engaged in mercantile business at Farnsworth, Mich., from December 5, 1900, until July 5, 1901.   On that day he sold to Van Valkenburg this stock of goods for $805.79, taking in payment $205.79 in cash, and two notes, of $100 and $500, respectively, due in five years from their date.   The smaller note was paid within a few weeks or months after it was given. At the time he sold to Van Valkenburg, the defendant owed to various creditors an aggregate sum of more than $1,500, of which $417.29 was due to the plaintiff.

(2) That soon after the sale plaintiff's agent secured two notes from the defendant, for the sum of $158.64 each, payable on demand; and, soon after, this defendant secured employment in Wexford county.

(3) He was there sued by the plaintiff, and judgment was taken for $323.02 damages and $23.30 costs.

(4) About the same time proceedings were commenced

there upon this claim under the fraudulent debtor act. This resulted in his discharge.

(5) Defendant employed J. B. Hendee as his attorney, and delivered the $500 note to him as security for his compensation. This was all the property that defendant had.

(6) Execution issued from the Wexford circuit to the Eaton county sheriff, who, with counsel for plaintiff, found defendant at his father's home.

(7) Demand was made that he pay the execution. He replied that he could not, for the reason that the only property he had was the $500 note, and he had turned that over to Hendee for services. He told plaintiff's counsel that he would turn out the note, if he could arrange it with Hendee, to which counsel replied that the note was on long time, and not worth the paper it was written on, and that he did not want it.

(8) It was not shown nor claimed on the trial that defendant had any other property.

(9) In January, 1902, application was made for the warrant in this case, on two grounds, viz.: *First*, defendant had disposed of his property with intent to defraud his creditors; *second*, he had rights of action and money, and evidences of debt, which he unjustly refuses to apply to the payment of said judgment.

(10) On the trial plaintiff waived any claim that defendant had disposed of his property with intent to defraud his creditors, and asked judgment in its favor on the second charge.

(11) After the warrant in that case was issued, James Casler, defendant's brother, procured the $500 note from Hendee, and turned it out to the maker, in part payment for his stock of goods, at its face value, including interest. It was not shown that defendant was in any way a party to, or had anything to do with, the transaction, or that any part of the note, or the money paid upon it, came to his hands.

## LAW.

"I am of the opinion that the plaintiffs have failed to show any facts which would justify the holding of defendant as a fraudulent debtor. It seems to me there is nothing upon which to base such a holding, unless it may be that expressed in the eleventh finding of fact. I am of the

opinion, if this has any bearing, it would be upon the allegation that defendant 'disposed of his property with intent to defraud his creditors,' and, claim under that having been waived, I do not consider it, except to make this statement: That I am not satisfied it would apply to that. I do not see how it can apply to the second allegation, under the facts. The case will be dismissed, with legal costs to be taxed."

From the foregoing, it is seen that the court found against the plaintiff upon the merits and upon both points, though he also found that the plaintiff waived the first point upon the trial.

Plaintiff excepted to several findings of fact, viz., the fifth, upon the point that the evidence failed to show that the note was turned out to Hendee to secure payment for his services; the seventh, that the testimony does not warrant the finding that plaintiff's counsel said that he did not want the note, etc., and that the evidence showed that Smedley's reason for refusing the note was that the offer was conditioned upon its acceptance as payment in full for several claims that he had; the eleventh, that the court erred in not finding that the defendant knew of the transaction between James Casler and Van Valkenburg, which is called "buying back the stock." We have examined the testimony critically, and find evidence tending to establish each and every finding of fact made by the learned circuit judge. It is argued in relation to the eleventh that, upon the showing made, Hendee had not such an interest in the note as permitted him to sell it to James Casler upon his promise to see that he was paid. We need not discuss that question, for, if counsel be right in this claim, it does not follow that defendant either had the note, or that the stock was bought back for him, or that he could have turned over either to the plaintiff. Counsel argue that the tenth finding, i. e., of a waiver of the first claim upon the trial was one that the judge had no right to make, because not supported by any evidence. They say that:

"The findings of the court should be statements of the ultimate facts found, and not of the probative facts. Neither evidence, argument, nor comment has any legitimate place in findings of facts."

We think it was proper for the court to make this finding of a material incident of the trial, which could appear in no other way. It is not important, however, as the court has found the merits against plaintiff upon both questions of fact, and none the less so though this may be thought to fully appear only from the finding of law.

The judgment of the circuit court is affirmed.

The other Justices concurred.